UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHELLE MARIE COSTANZO,

                            Plaintiff,

    -v-

ANDREW SAUL,
Commissioner of Social Security,

                            Defendant.

19-CV-283-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 13).

Plaintiff Michelle Marie Costanzo brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security finding her ineligible for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 10) is granted, the Commissioner's motion (Dkt. No. 11) is denied, and the case is remanded.

## BACKGROUND[1]

Plaintiff protectively filed an application for SSI on November 9, 2015, alleging a disability as of May 6, 2015, due to three ruptured herniated discs in her back; a fractured sternum bone; high blood pressure; carpal tunnel syndrome, both arms; nerve damage

---

[1] The Court assumes the parties' familiarity with the record in this case.

in her left wrist; and tendinitis in her left arm. (Tr. 155-156, 174).[2] Her claim was initially denied on January 22, 2016. (Tr. 93-98). On February 10, 2016, Plaintiff filed a timely written request for a hearing. (Tr. 101-102).

On February 27, 2018, a hearing was conducted by Administrative Law Judge ("ALJ") Mary Mattimore, in Buffalo, New York. (Tr. 40-83). Plaintiff appeared, along with her attorney. A vocational expert also appeared.

On April 12, 2018, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 13-30). That decision became final when on January 10, 2019, the Appeals Council denied her request for review. (Tr. 1-7). This action followed.

## DISCUSSION

### I. Scope of Judicial Review

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record,

---

[2] References to "Tr." are to the administrative record in this case.

read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether

such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed

in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

Under step one, the ALJ found that Plaintiff has not engaged in substantial activity since the alleged onset date, May 6, 2015. (Tr. 18). At step two, the ALJ concluded that Plaintiff has the following severe impairments: herniated discs lumbar; carpal tunnel syndrome; migraine headaches; nerve damage left wrist; tendinitis, left arm; left thumb tendinitis; radial styloid tenosynovitis; and obesity. (Tr. 18-19). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 19-20). Before proceeding to step four, the ALJ assessed Plaintiff's RFC, in pertinent part, as follows:

> [T]he claimant has the residual functional capacity to perform light work . . . except can sit for 6 hours in a day but only for 1 hour at a time; stand and walk 5 hours total in a workday but only for 1 hour at a time; requires the freedom to change positions while on task and staying near the work station; she can occasionally climb ramps, stairs, ladders, ropes, scaffolds, stoop, kneel, crouch and crawl; can occasionally finger and handle bilaterally; can have no exposure to bright, flashing, flickering light and can tolerate moderate noise levels . . . can perform simple routine work and make simple workplace decisions, not at production rate (assembly line pace).

(Tr. 20). Proceeding to step four, the ALJ found that Plaintiff is capable of performing her past relevant work as an embroidery machine operator or a retail sales associate. (Tr. 24). In the alternative, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in

the national economy that she can perform, such as school bus monitor, switch board operator, and surveillance systems monitor. (Tr. 24-25). Accordingly, the ALJ concluded that Plaintiff is not disabled under the Act. (Tr. 25).

IV.   *Plaintiff's Challenges*

Plaintiff argues, *inter alia*, that the ALJ erred because the January 12, 2016 medical opinion of consultative examiner Dr. Rita Figueroa, M.D., the only medical opinion relied upon by the ALJ in determining Plaintiff's RFC, was stale. Plaintiff contends, therefore, that the case must be remanded. The Court agrees.

An ALJ may not rely on medical source opinions that are stale when determining the claimant's RFC. *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018) (citing *Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (remanding for staleness when ALJ relied on consultative examination that occurred prior to multiple surgeries over five years)); *Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015); aff'd, 652 F. App'x 25 (2d Cir. 2016). "It is well-settled that an 'ALJ should not rely on 'stale' opinions—that is, opinions rendered before some significant development in the claimant's medical history.'" *Clark v. Comm'r of Soc. Sec.*, No. 18-CV-0509-MJR, 2019 WL 3886723, *3 (W.D.N.Y. Aug. 19, 2019) (quoting *Robinson v. Berryhill*, No. 17-CV-0362, 2018 WL 4442267, at *4 (W.D.N.Y. Sept. 17, 2018)). A medical opinion may be stale if it does not account for the claimant's deteriorating condition. *Carney v. Berryhill*, 2017 WL 2021529 *6 (W.D.N.Y. May 12, 2017). Where "the medical assessments relied upon by the ALJ were stale and based on an incomplete medical record, the ALJ [can] not remedy that deficiency by making the connection between the medical records and Plaintiff's functional limitations herself."

*Davis v. Berryhill*, No. 6:16-CV-06815 (MAT), 2018 WL 1250019,*3 (W.D.N.Y. March 11, 2018).

Here, in determining Plaintiff's RFC, the only medical opinion evidence relied upon by the ALJ in determining Plaintiff's RFC was the medical opinion of Dr. Figueroa, to which she gave "significant weight." (Tr. 23). However, Dr. Figueroa's opinion was from January 2016, over two years prior to the ALJ's decision. Subsequent to Dr. Figueroa's opinion, Plaintiff had MRI's showing abnormalities regarding her brain and cervical spine. (Tr. 328-329, 340-344, 364-365, 408, 473-474). These were new, significant developments in Plaintiff's medical history. See *Alessi v. Colvin*, 14-CV-7220 (WFK), 2015 WL 8481883 at *5 (E.D.N.Y. Dec. 9, 2015) (the ALJ erred by giving controlling weight to a consultative examiner who did not review MRIs that showed some abnormalities; even if the ALJ himself or herself considered the MRIs).

There is also evidence that Plaintiff's condition deteriorated subsequent to Dr. Figueroa's opinion. In August 2016, she reported that she was suffering from migraine headaches once a month and lasting for a day; that she was now also suffering from daily, severe headaches; that she also had dizziness, unsteadiness, weakness, numbness, and blurring of the vision; and that earlier in the month, she starting having numbness and tingling in her extremities. (Tr. 341). On examination, she had decreased sensation to light touch, which was considered a "remarkable" finding. (Tr. 339, 342). In February 2017, she reported that she was having 4-5 migraines a month, with one severe migraine per month; that these migraines were causing nausea and vomiting; and that she had vision blurring. (Tr. 332). In May 2017, imaging showed she had a lesion which likely represented a Dawson's finger, as seen in multiple sclerosis. (Tr. 360, 364-365).

In January 2018, she reported worsening symptoms, such as dropping things more frequently; difficulty hearing; memory difficulty; short-term recall issues; forgetting conversations with people; and blurry vision. (Tr. 469). On examination, she scored poorly on short term recall, and had decreased sensation in her hands. (Tr. 471).

Dr. Figueroa obviously did not consider the new imaging evidence or the evidence of Plaintiff's deterioration in rendering her opinion as it all occurred subsequent to her rendering her opinion. Thus, her opinion was stale and the ALJ's reliance on it is not supported by substantial evidence.

Because Dr. Figueroa's opinion was the only medical opinion upon which the ALJ relied when determining Plaintiff's RFC and it was stale, there is now a gap in the record necessitating a remand. See Smith v. Saul, No. 17-CV-6641-CJS, 2019 WL 2521188, at *2 (W.D.N.Y. June 19, 2019) ("Decisions in this district have consistently held that an ALJ's RFC determination without a medical opinion backing it is, in most instances, not an RFC supported by substantial evidence."); see also Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (rejecting medical opinion that left gaps in the record triggering duty to develop the record). "As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations ..., to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." Nanartowich v. Comm'r of Soc. Sec. Admin., No. 17-CV-6096P, 2018 WL 2227862, at *11–12 (W.D.N.Y. May 16, 2018) (quoting Gross v. Astrue, No. 12-CV-6207P, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014)); see also Balsamo v. Chater, 142 F.3d 75, 81

(2d Cir.1998) ("In the absence of a medical opinion to support the ALJ's finding ... the ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion.").[3]

## CONCLUSION

For the reasons stated, Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 11) is denied, and this case is remanded for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   June 12, 2020
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge

---

[3] Plaintiff also argues that remand is required because the ALJ erred at step two by failing to find that Plaintiff's pseudotumor was a severe impairment. Because the case is being remanded anyway, the Commissioner should also consider this argument on remand. Further, it appears that the ALJ's step four finding that Plaintiff could perform her past relevant work was error, as it conflicts with the vocational expert's testimony that a person with Plaintiff's RFC could not perform the jobs of embroidery machine operator or retail sales associate. The Commissioner should also address this issue on remand.